**FIRST COMMERCIAL CORPORATION,**
**Plaintiff,**

v.

**FIRST NATIONAL BANCORPORA-**
**TION, INC., et al., Defendants,**

v.

**FIRST COMMERCIAL CORPORATION,**
**COUNTERTOPS I–M, INC., et al.,**
**Third-Party Defendants.**

**Civ. A. No. 82–A–1957.**

United States District Court,
D. Colorado.

Sept. 14, 1983.

Frank W. Visciano, Vranesic & Visciano, Denver, Colo., for plaintiff and third-party defendants First Commercial Corp.

Richard M. Lucas, Hall & Evans, Denver, Colo., for third-party defendants Counter-tops I–M, Inc.

## MEMORANDUM OPINION AND ORDER

ARRAJ, District Judge.

This interpleader action was brought pursuant to C.R.C.P. 22 to determine the rightful claimant or claimants to the proceeds of a certified check issued by Mission Viejo Co. The check was jointly payable to Accent Sales Corporation (Accent), a subcontractor, First Commercial Corporation (F.C.C.), and unpaid materialmen and suppliers of Accent, including Countertops I–M, Inc. (Countertops).

First Commercial Corporation claims entitlement to the full amount of the check, $33,411.55, pursuant to a perfected security interest in Accent's accounts receivable. Countertops asserts a right to $10,134.73 of such funds based upon unpaid bills for materials furnished to Accent as of the date of issuance of the check.

This case began in District Court, City and County of Denver, and was properly removed by the United States, a former third-party defendant, pursuant to 28 U.S.C. § 1444. A trial to the court was held on August 26, 1983. The following will constitute my findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

### I

In February 1977 Accent entered into a security agreement with First Commercial Corporation, giving F.C.C. a security interest in all of Accent's present and future accounts receivable and proceeds of accounts. C.R.S.1973 §§ 4–9–106, 4–9–201. F.C.C. immediately perfected this security interest. C.R.S.1973 § 4–9–303.

Mission Viejo subcontracted with Accent Sales Corp. to furnish and install kitchen cabinets and countertops in Mission Viejo's development. Accent purchased its countertop supplies for the Mission Viejo project directly from Countertops I–M, Inc., a custom manufacturer of the product.

Accent's financial condition deteriorated in late December 1977 and early January 1978; it failed to keep current its account with Countertops. Consequently, Counter-tops stopped providing Accent with its product. Shortly thereafter an agreement was reached: Accent would pay $6000 to bring its balance up-to-date and Countertops would resume supplying materials for the project. Accent paid this sum and Countertops furnished more countertops.

Several months passed and Accent allowed its account with Countertops to slip into arrears. In mid-April 1978 Countertops notified Mission Viejo directly that Accent was not paying for materials supplied to it by Countertops. During that conversation, Mission Viejo raised the possibility of issuing a joint check to force payment of materialmen and to prevent the attachment of liens on its project.

Accent defaulted on its loan from F.C.C., and F.C.C. notified Mission Viejo to pay F.C.C. the payments owed to Accent. Mission Viejo issued a certified check on June 2, 1978, for $33,411.55, naming as payees Accent Sales Corp., First Commercial Corp., Countertops I–M and Diamond Industries (another materialman). Mission Viejo mailed the check to Bruce Lassman, Accent's attorney, on June 5, 1978. For a time after the check was issued, Countertops made several unsuccessful attempts to have the check endorsed and the proceeds divided.

Countertops also took several steps to preserve its mechanic's lien rights under C.R.S.1982 § 38–22–101 et seq. However, it failed to satisfy the statute's written notice requirement, C.R.S.1982 § 38–22–102(4) and to foreclose the liens within six months, C.R.S.1982 § 38–22–110. As a result, Countertops does not have a cognizable materialman's lien.

The check was lost for several years; and in 1981, thinking it had been cashed, F.C.C. sued the drawee bank, First National Bancorporation. Mission Viejo later located the check in Bruce Lassman's files (Accent's attorney) and determined that it had not been presented for payment. Mission Viejo deposited the check into the state court registry and commenced this interpleader action. The United States, one of the inter-

pleader defendants, removed the action pursuant to 28 U.S.C. § 1444. On stipulation of the parties, the check was converted to cash and deposited in an interest-bearing account.

Accent (which is no longer in business), Diamond, Lassman and Mission Viejo asserted no interest in the check, and judgments or dismissals were entered against them. F.C.C.'s claims against First National Bancorporation (now known as Intra-West Financial Corporation) and the Colorado Department of Revenue's claim to a portion of the check proceeds were voluntarily dismissed. Summary judgment was granted against the United States, leaving only two interested parties in the check: F.C.C. and Countertops.

## II

■ The critical question raised by the facts in this case is whether an unsecured supplier claiming an interest under C.R.S. 1982 § 38–22–127, which imposes a trust fund for materialmen and laborers, takes priority over a prior perfected security interest in all present and future accounts receivable and proceeds of accounts.

The validity of F.C.C.'s security interest in Accent's accounts receivable[1] and the specific amount Accent owed to Countertops as of June 2, 1978, are not disputed. The controversy concerns whether the entire amount due Accent under the Mission Viejo construction contract was subject to F.C.C.'s security interest. If F.C.C.'s security interest did not attach to funds held in trust for the benefit of materialmen, C.R.S. 1982 § 38–22–127, then Countertops has priority over F.C.C.

The Colorado Uniform Commercial Code (U.C.C.) defines "account" as any "right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance." C.R.S.1982 Supp. 4–9–106; *Weld Colorado*

*Bank v. E & E Construction, Inc.,* 653 P.2d 758 (Colo.App.1982). A security interest in accounts receivable is "perfected when it has attached and when all steps for perfection have been taken." C.R.S.1973 § 4–9–303. However, attachment does not occur unless: 1) the collateral is in the possession of the secured party or the debtor has signed a security agreement; 2) value has been given; and 3) the debtor has rights in the collateral. C.R.S.1982 Supp. § 4–9–203(1). F.C.C.'s priority is therefore contingent upon a finding that it had rights in *all* of Accent's accounts receivable.

Colorado law makes clear that F.C.C.'s security interest did not attach to funds held in trust for materialmen. Section 38–22–127 (1982) of the Colorado Revised Statutes provides as follows:

> (1) All funds disbursed to any contractor or subcontractor under any building, construction, or remodeling contract or any construction project shall be held in trust for the payment of the subcontractors, material suppliers, or laborers who have furnished materials, services, or labor, who have a lien or may have a lien, against the property, or who claim, or may claim, against a principal and surety under the provisions of this Article and for which such disbursement was made.

In *Re Specialized Installers, Inc.,* 12 B.R. 546 (Bkrtcy.D.Colo.1981), the Bankruptcy Court considered whether the Colorado lien statute, C.R.S.1982 § 38–22–127, creates an express, statutory trust. In that case, the landowner (Climax) made payments to the contractor (debtor) with the expectation that payments would then be made to the subcontractor. The contractor failed to pay the subcontractor, so Climax agreed to pay the subcontractor in full in exchange for a release of a materialmen's lien. Climax brought suit against the debtor and others seeking to recover monies alleged to be held in trust by the defendants.

---

**1.** Countertops and F.C.C. stipulated that F.C.C. had a valid, enforceable and perfected security interest in the accounts receivable and proceeds of accounts of Accent: (i) as of February

3, 1977, and thereafter; and (ii) specifically as of June 2, 1978—the date of the certified check's issuance.

The *Specialized Installers* court concluded that the Colorado statute "is unambiguous in its creation of a trust relationship." *Id.,* at 551; *see also In re Romero,* 535 F.2d 618 (10th Cir.1976) (where the court found a New Mexico statute creates a fiduciary duty based upon an express trust); *In re Johnson,* 691 F.2d 249 (6th Cir.1982) (where Michigan Builders statute found to create a "trust"); *Carey Lumber Co. v. Bell,* 615 F.2d 370 (5th Cir.1980) (where Oklahoma lien law was found to create an express trust); and *Matter of Kawczynski,* 442 F.Supp. 413 (W.D.N.Y.1977) (where New York lien law was found to create an express trust in favor of subcontractors). "The corpus of the trust is unmistakably defined. Every contractor is required to maintain separate records of account for each project. Violation of the statute constitutes the crime of theft." *Specialized Installers, supra* at 551. Accordingly, the court found that the check issued by Climax to the debtor was held in statutory trust.

Both property owners and material suppliers may enforce the statutory trust. *Specialized Installers, supra* at 551; *Matter of Kawczynski, supra; Detroit Metropolitan Area Committee of Bricklayers, Masons and Plasterers International Union of America, AFL–CIO v. Leto Construction Co.,* 423 F.Supp. 701, 703 (E.D.Mich.1976) (Leto). Since a property owner faces potential double payment, it is a direct beneficiary of the trust. *Specialized Installers, supra* at 551. The statute is also a separate form of protection and relief—from the Mechanics' lien statute—to unpaid laborers and materialmen. As one court observed, "any other interpretation would render one of these statutes superfluous." *National Bank of Detroit v. Eames and Brown,* 396 Mich. 611, 242 N.W.2d 412, 417 (1976) (referring to the Michigan Builders Contract Fund Act and the Michigan Mechanics' Lien Statute).

Colorado courts have not yet considered the question of priority between a perfected security interest in accounts receivable and a supplier's interest under the Colorado statutory trust provision, C.R.S. 1982 § 38–22–127. However, the Colorado Court of Appeals has resolved a comparable priority dispute with respect to a supplier's interest under the Colorado Public Projects Lien Statute, C.R.S.1982 § 38–26–107. In two recent decisions, *Weld Colorado Bank, supra,* and *Heinrichsdorff v. Raat,* 655 P.2d 860 (Colo.App.1982), the court held that the bank had no security interest in that portion of the funds due from the construction contract until such time as all suppliers of labor and materials had been paid. Since the bank's security interest could not attach to those funds, the trial court in *Heinrichsdorff* erred as a matter of law in granting 'priority' to the bank's claim. *Id.,* at 862. These cases reflect the clear policy underlying Colorado law: that laborers and suppliers of materials in construction projects are to be paid.

Other jurisdictions have addressed the specific priority question raised by a trust lien provision. In *Leto, supra,* the court found that the accounts receivable owed the employer by garnishees were subject to the Michigan Builders Trust Fund Act.[2] This trust interest, or lien, was superior to the security interest of the bank in the employer's accounts receivable, as long as the bank could not prove that any money lent was in fact used to pay laborers, materialmen and others in the project. *Id.,* at 703. *See also National Bank of Detroit v. Eames and Brown, supra.* The *Leto* court emphasized that a contractor should not be allowed to defeat the purpose of a Trust Fund Act by granting a security interest in funds held in trust for the materialmen's benefit. 423 F.Supp. at 703; *Eames and Brown, supra* at 412.

---

**2.** M.C.L.A. § 570.151 *et seq.;* M.S.A. § 26.331 *et seq.*

Sec. 1 In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by the act to be a trust fund, for the benefit of a person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.

Turning now to the instant case, I find that Countertops has priority over F.C.C. with respect to the $10,134.73 held in trust under the Colorado Trust Lien Statute. C.R.S.1982 § 38–22–127. An unsecured supplier claiming an interest under this Act takes priority over a prior perfected security interest in all present and future accounts receivable and proceeds of accounts. All that is required is that the money be actually owed to the contractor; "no actual payment to a contractor is needed before his employees become beneficiaries under the Act." *Leto, supra* at 703. Until a contractor or subcontractor pays material suppliers who may have a lien on the property, a security interest in that portion of the contractor's accounts receivable will not attach. Therefore F.C.C.'s security interest in Accent Sales' accounts receivable did not attach to the entire amount due Accent under the Mission Viejo construction contract. Finally, because the check proceeds did not originate from the holder of the security interest, F.C.C. had no right to or interest in the $10,134.73 Accent owed Countertops.

### III

The foregoing discussion established that the interpleaded check was held in statutory trust for the benefit of Countertops I–M, Inc. In the alternative, I find that the check was subject to a constructive trust for the benefit of Countertops.

Although the court in *Specialized Installers, supra,* held that a statutory trust arose, it also recognized the viability of a constructive trust theory of relief. 12 B.R. at 553. "A constructive trust is an equitable remedy devised to prevent unjust enrichment and compel restitution of property that in equity and good conscience does not belong to the Defendant." *Id.* It does not require an intent to create a trust. Dobbs, *Remedies* § 5.3 at 240 (1973 ed.) The key requirement is a relationship of trust and confidence between the parties. According to the Colorado Supreme Court, a confidential relationship arises when one party has justifiably reposed confidence in another.

*Page v. Clark,* 197 Colo. 306, 592 P.2d 792, 798 (1979); *Specialized Installers, supra* at 553.

The relationship between Accent Sales and Countertops was confidential; it was more than a mere creditor-debtor relationship. *Page, supra.* Countertop's decision to resume production and delivery of materials to Accent in January 1978 was based on Accent's direct assurances and promises that it would pay its outstanding balance and that it would continue to keep current its account. In addition, Countertops was justified in expecting that Accent would carry out its legal and contractual duty to pay Countertops for materials furnished.

I therefore find that $10,134.73 of the interpleaded check was subject to a constructive trust for the benefit of Countertops.

### IV

The final question to resolve in this case concerns the matter of interest. The original check, for $33,411.55, was misplaced for approximately three and one half years before it was deposited in the registry of the state court. Although it failed to earn interest during that period, once the case was removed pursuant to 28 U.S.C. § 1444, the check was placed in an interest-bearing account. The aggregate amount of interest earned totals $1,190.45.

F.C.C. and Countertops are entitled to a proportionate share of this interest based upon the percentage of their relative claims. Although F.C.C. established that at the time the check was issued Accent owed it over $39,000, we are limited in our consideration to the actual amount of the check, $33,411.55. Countertops asserts a right to $10,134.73 of the check proceeds. Given this three-to-one ratio, Countertops will receive $297.61 and F.C.C. will receive $892.84 of the interest earned on the deposit.

Countertops also requests that it be awarded statutory interest at the rate of 12% per annum from the date of issuance of

the check to the date of judgment. C.R.S. 1973 § 38–22–101(5).

 Under Colorado law, the awarding of interest is controlled entirely by statute. It is not available on a common law or equity basis. *Quad Construction Inc. v. Smith Contracting Co.,* 534 F.2d 1391 (10th Cir.1976); *Dennis v. Bradbury,* 238 F.Supp. 602 (D.Colo.1965), *aff'd* 368 F.2d 905 (10th Cir.1966); *York Plumbing & Heating Co. v. Groussman,* 166 Colo. 382, 443 P.2d 986 (1968). In the absence of a contract provision, interest is recoverable only in such cases "as are enumerated in the statute." *Davis Cattle Co., Inc., v. Great Western Sugar Co.,* 393 F.Supp. 1165, 1185 (quoting *Mitton v. Granite State Fire Insur. Co.,* 196 F.2d 988 (10th Cir.1952)). The statutory language must be strictly construed. *Stone v. LABCO Construction Co.,* 508 P.2d 399 (Colo.App.1973).

■ Countertops' request for 12% interest is based upon C.R.S.1982 § 38–22–101(5) which provides:

> All claimants who establish the right to a lien or claim under any of the provisions of this article shall be entitled to receive interest on any such lien or claim at the rate provided for under the terms of any contract or agreement under which labor or material was supplied or, in the absence of an agreed rate, at the rate of 12% per annum.

The Colorado Supreme Court has made it clear that this Section is a special statute "which is applicable to mechanic lien claims only." *Weather Engineering & Manufacturing, Inc. v. Pinon Springs Condominiums, Inc.,* 192 Colo. 495, 563 P.2d 346, 351 (1977). Countertops' basis for recovery is grounded not in the materialmen's lien statute, but rather in the trust lien provision. C.R.S.1982 § 38–22–127. This is a separate and distinct theory of relief. I therefore find that Countertops should not be awarded 12% interest per annum from the date of issuance of the check to the date of judgment.

## CONCLUSION

For the foregoing reasons, Countertops I–M, Inc., is entitled to recover $10,134.73 plus $297.61 in interest earned on the deposit. First Commercial Corporation is entitled to recover the remaining portion of the interpleaded check, $23,276.82, and $892.84 in interest earned on the deposit. Each party shall bear its own costs.

Judgment shall be entered accordingly.