**In re Peter Bowen BARNES, Debtor.**

**Pritchard Concrete, Inc., Plaintiff,**

**v.**

**Peter Bowen Barnes, Defendant.**

**Preferred Craftsmen, Inc., Plaintiff,**

**v.**

**Peter Bowen Barnes, Defendant.**

**BRR Enterprises, Inc., Plaintiff,**

**v.**

**Peter Bowen Barnes, Defendant.**

**Timberline Kitchen and Bath, Inc., Plaintiff,**

**v.**

**Peter Bowen Barnes, Defendant.**

**Bankruptcy No. 03–24650 HRT.**
**Adversary Nos. 03–2031 ABC, 03–2036 ABC, 03–2037 ABC, 03–2127 ABC.**

United States Bankruptcy Court,
D. Colorado.

Oct. 5, 2007.

Joseph C. Cohen, Littleton, CO, Mark D. Gruskin, Denver, CO, for Plaintiff.

Peter C. Forbes, Denver, CO, for Defendant.

## ORDER GRANTING, IN PART, PLAINTIFFS' JOINT MOTION FOR SUMMARY JUDGMENT

A. BRUCE CAMPBELL, Bankruptcy Judge.

This matter is before the Court on the Joint Motion for Summary Judgment filed by the Plaintiffs and the Response thereto filed by Defendant. The Court, having reviewed the Motion, the Response, and the supplemental materials submitted by Plaintiffs Timberline Kitchen and Bath, Inc. and BRR Enterprises, Inc., and being otherwise advised in the premises, finds and concludes as follows.

### I. Background and Procedural History

These four adversary proceedings arise from the construction of a single family residence at 4747 South Downing Street in Cherry Hills Village, Colorado (the Property). Plaintiffs are unpaid suppliers of material and/or labor to the construction project on the Property. Each of the Plaintiffs has asserted that it has a debt against the Debtor/Defendant, Peter Bowen Barnes (the Debtor), which is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4) as a result of the Debtor's defalcation while acting in a fiduciary capaci-

ty. Plaintiffs allege that the Debtor and/or his companies. Big Mountain Development Group, LLC (Big Mountain) and Bowen Custom Builders, LLC (Bowen) received funds which constituted trust funds under the Colorado Mechanic's Lien Trust Fund Statute, C.R.S. § 38–22–127 (the Trust Fund Statute), and that the Debtor, Big Mountain and/or Bowen failed to account for the use of these funds in a manner consistent with the trust.

The four adversary proceedings were Filed in November and December, 2003 and were consolidated for trial. As the matters proceeded towards trial, a discovery dispute arose and the Court determined the Debtor had failed to adequately respond to Plaintiffs' discovery requests. As a sanction for the Debtor's failure to respond to the discovery requests and his failure to appear at a scheduled pre-trial hearing, the Court directed the Plaintiffs to file Motions for Default Judgment on their claims under 11 U.S.C. § 523(a)(4). Thereafter, Plaintiffs filed a Joint Motion for Default and/or Summary Judgment (the Joint Motion) which was supported by various affidavits and a partial transcript of the deposition of the Debtor.[1] The Debtor filed a response to the Joint Motion on December 22, 2004 and the Court held a hearing on the Joint Motion on April 14, 2005. At that hearing, the Court ordered the Debtor to pay Plaintiffs' attorneys fees incurred as a result of the Debtor's failure to comply with discovery and his failure to appear at the pre-trial hearing. The Court further ordered that if the

Debtor failed to pay the attorneys fees and costs, it would consider the Joint Motion.

The Debtor paid the attorneys fees as ordered, and at a status conference held on July 13, 2005, the Court ordered Plaintiffs to supplement their pending Motion for Summary Judgment by July 29, 2005.[2] The Debtor was ordered to respond to any such supplements by August 15, 2005. Plaintiffs BRR Enterprises, Inc. (BRR) and Timberline Kitchen and Bath, Inc. (Timberline) filed supplemental affidavits. Plaintiffs Pritchard Concrete, Inc. (Pritchard) and Preferred Craftsmen, Inc. (Preferred) did not. The Debtor filed no further response to the Joint Motion.

At a pre-trial conference held on January 12, 2006, the parties agreed that the Joint Motion and all matters in the case should be held in abeyance pending a decision by the Tenth Circuit Court of Appeals in a case which presented the question of whether a valid mechanics' lien was required in order for an unpaid supplier of labor or material to a construction project to claim the benefits of the Trust Fund Statute. The Tenth Circuit's decision in the case, *Fowler & Peth, Inc. v. Regan (In re Regan)*, 477 F.3d 1209 (10th Cir.2007), was issued earlier this year. Plaintiffs thereafter requested that these adversary proceedings be "reactivated."

On June 5, 2007, the Court granted Plaintiffs' request to "reactivate" the case and allowed the Debtor fifteen days to

---

1. The Joint Motion requested default and/or summary judgment only on Plaintiffs' claims for breach of the Trust Fund Statute and for declarations of non-dischargeability under 11 U.S.C. § 523(a)(4). Plaintiffs Preferred, BRR and Timberline did not seek other relief in their complaints. Plaintiff Pritchard, however, has ten additional claims for relief in its complaint which are not the subject of the Joint Motion.

2. The Court declined to enter the judgment by default as requested in the Joint Motion because Defendant had complied with the order to pay the attorneys fees. However, the Court determined that, to the extent the Joint Motion included a request for entry of a summary judgment, it was still pending.

respond to the Joint Motion. The Debtor again failed to respond.

## II. Undisputed Facts

The following facts are undisputed.

1. The Debtor is the sole member and manager of both Bowen and Big Mountain. *Deposition of Peter Bowen Barnes (Depo.)*, p. 6, l. 19–p. 7, l. 6.

2. Bowen was the "general contractor" of the construction project on the Property. Big Mountain was the "developer" of the Property. *Depo.*, p. 6, l. 11–18.

3. The Property was owned by Big Mountain and was sold, on December 16, 2002, to Stephen and Neyeska Mut for $2,814,855.00. *Depo.*, p. 14, l. 4–22 and *Depo. Exhibit* 4.

4. The Closing Statement from the sale of the Property shows that $1,920,160.02 from the proceeds received by Big Mountain were applied to pay Colorado State Bank and Trust (the Bank) for the construction loan on the Property. *Depo.*, p. 14, l. 24–p. 15, l. 11 and *Depo. Exhibit* 4.

5. Copies of all draw requests produced by the Debtor show that approximately $1,093,563.80 was disbursed by Big Mountain from its construction loan account at the Bank to suppliers of materials and/or labor to the construction project on the Property. *Depo.*, p. 28, l. 23–p. 29, l. 8, *Depo. Exhibits* 5–9.

6. In excess of $800,000 was disbursed by the Bank to Big Mountain on the construction loan for which there are no corresponding draw requests showing payments to suppliers of material or labor. *Depo.*, p. 28, l. 23–p. 29, l. 8.

7. A portion of the proceeds from the sale of the Property were used to make a $400,000 payment on a loan that the Debtor owed to Teaneck Partners. Teaneck Partners had loaned the Debtor $1.1 million which was used by the Debtor to acquire property located at 5252 Franklin Street. *Depo.*, p. 63, l. 2–14; *Depo. Exhibit* 4.

8. The proceeds from the sale of the Property were also used to pay off a $70,000 loan from the Debtor's father, John Barnes, and a $100,000 loan from the Debtor's father-in-law, Joe Keesee who had loaned money for "construction." *Depo.*, p. 17, l. 12–21; p. 19, l. 4–14; *Depo. Exhibit* 4.

9. In order to pay suppliers on the Property, Big Mountain submitted invoices from suppliers and checks in the amount of the invoices to the Bank. The checks were drawn on Big Mountain's construction loan account and signed by the Debtor. The Bank the compiled disbursement requests listing all the payees of the checks and corresponding amounts. The Debtor signed the disbursement requests and the Bank mailed out the checks to the suppliers. *Depo.*, p. 20, l. 25–p. 21, l. 25; p. 25, l. 22–p. 26, l. 5; p. 32, l. 7–18.

10. The Debtor was the only person in control of the finances of Big Mountain and Bowen and the Debtor was the only person in control of submitting disbursement requests to the Bank. The Debtor was the only person who could exercise control over the checks that were issued to the suppliers on the construction project on the Property. *Depo.*, p. 31, l. 22–p. 34, l. 8.

11. Beginning in October 2002 and continuing into November 2002, Pritchard performed concrete subcontract work on the Property. On November 20, 2002 Pritchard submitted its invoice to Bowen in the amount of $54,217.80 for the concrete subcontract work. Pritchard has never been paid for its work on the Property. *Affidavit of Chet Pritchard*, Paragraphs 2, 5 and 6.

12. Preferred performed interior trim work *on* the Property. It is owed $30,261.00 for unpaid labor and material provided to the Property. *Affidavit of Trevor Bramwell,* Paragraphs 3, 5, 6, 7, and 8, *and invoices attached thereto.*

13. BRR supplied materials to the Property and was not completely paid for the materials it supplied. It is owed the principal amount of $16,247.21 for the materials supplied to the Property, less payments totaling $3,744.92 received by BRR from Bowen's bankruptcy estate and from a settlement with the purchasers of the Property. *Affidavit of Ron Stevens,* Paragraphs 2, 3, and 4; *BRR's Amendment to Supplement Concerning Damages,* Paragraphs 3 and 4.

14. Timberline also provided materials and labor to the construction project on the Property. The total principal amount for which Timberline is unpaid for materials and labor is $26,724.41. Of this amount, $149.33 resulted from a modification to the contract between Timberline and Bowen which occurred after the sale of the Property to the Muts. Another $2,988.64 of this amount is attributable to "extras" ordered from Timberline by the Muts after they acquired the Property from Big Mountain. The total amount of "extras" ordered by the Muts in March, 2003 was $12,988.64 and Timberline received a payment of $10,000 from the Muts on or about June 30, 2003. *Affidavit of James Carey dated December 1, 2004,* Paragraphs 2, 5, 10, 11, 12, and 13 and *Exhibits A–C to Cary Affidavit.*

### III. Arguments of the Parties

Plaintiffs argue that the funds disbursed to Big Mountain under the construction loan and the funds received by Big Mountain upon the sale of the Property to the Muts constituted the corpus of a trust for their benefit under the Trust Fund Statute. They claim that it is undisputed that Big Mountain has failed to account for the use of all of the proceeds disbursed to it under the construction loan and that the failure to account for these funds as well as the payments to Teaneck Partners, John Barnes, and Joe Keesee from the proceeds of the sale of the Property constituted breaches of the Trust fund Statute. Plaintiffs contend that the Debtor, as the sole owner and controlling member of Big Mountain and Bowen, is personally liable for any breach of the Trust fund Statute and that his debt is non-dischargeable as a defalcation while acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4). Plaintiffs claim that they are entitled to treble damages and attorneys fees under C.R.S. § 38–22–127(5) which provides that any person who violates the Trust Fund Statute is guilty of theft.

Defendant contends that Plaintiffs claims are outside the scope of § 523(a)(4) for several reasons. First, he claims that the Trust Fund Statute only applies when funds are disbursed to a contractor or subcontractor, Defendant claims that there is no evidence that funds were disbursed to him or to any entity under his control. He maintains that the funds from the construction loan were paid directly to the suppliers by the Bank. Alternatively, to the extent that funds were disbursed by the Bank to Big Mountain, Defendant argues that the Trust Fund statute would not apply since Big Mountain was the owner of the Property not a general contractor or subcontractor. Defendant also argues that neither the Debtor, Big Mountain, nor Bowen received any proceeds at closing since all of the closing proceeds were disbursed directly by the title company to the payees. Defendant contends that "much" of the work for which Plaintiffs claim to be unpaid was for additional work requested by the purchasers of the Property directly from the Plaintiffs and that Plaintiffs may

have been paid by the purchasers or from other sources for the amounts set forth in the complaints. Finally, Defendant argues that Plaintiffs are not entitled to treble damages or attorneys fees for a violation of the Trust Fund Statute without proof of intent to steal. Defendant has filed no affidavits and has failed to otherwise designate specific facts in support of his claims or to dispute the factual bases of Plaintiffs' claims.

## IV. Discussion

### A. Summary Judgment Standards

Federal Rule of Civil Procedure 56, made applicable to adversary proceedings by Bankruptcy Rule 7056, provides that summary judgment shall be granted, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir.1991). In considering whether there exist genuine issues of material fact, the court does not weigh the evidence but instead inquires whether a reasonable jury, faced with the evidence presented, could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and, by affidavits or otherwise, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. Section 523(a)(4)

A creditor seeking to except a debt from discharge under 11 U.S.C. § 523(a)(4) must establish two elements. They are: (1) That a fiduciary relationship existed between the debtor and the creditor, and (2) that the debt owed to the creditor is attributable to the fraud or defalcation committed by the debtor in the course of the fiduciary relationship. *In re Storie*, 216 B.R. 283, 286 (10th Cir. BAP 1997); *In re Woods*, 284 B.R. 282, 288 (D.Colo.2001).

Determining whether a fiduciary relationship existed between the debtor and the creditor is a question of federal law, but state law is relevant. *In re Young*, 91 F.3d 1367, 1371 (10th Cir.1996). In order to show a fiduciary relationship under § 523(a)(4), there must be an express or technical trust. *Id.* There are three requirements which must be satisfied in order for a statutory trust to create a fiduciary relationship which is sufficient under § 523(a)(4). There must have been a *res* of property entrusted to the trustee, the statute must create or identify some fiduciary duty, and the trust must be in place when the defalcation occurs. *In re Gunter*, 304 B.R. 458, 460–61 (Bankr.Colo. 2003). The Trust Fund Statute provides that "[a]ll funds disbursed to a contractor or subcontractor . . . on any construction project shall be held in trust for the payment of . . . subcontractors, labor or material suppliers. . . ." C.R.S. § 38–22–127(1). This statute does create an express trust sufficient to establish a fiduciary relationship for the purposes of § 523(a)(4). *Fowler & Peth, Inc. v. Regan (In re Regan)*, 477 F.3d 1209, 1211 n. 1 (10th Cir. 2007). Plaintiffs are not required to have a properly perfected mechanics' lien, or

still be able to perfect a lien, to be a beneficiary of the trust created by the Trust Fund Statute. *Fowler & Peth, Inc. v. Regan (In re Regan),* 151 P.3d 1281, 1289 (Colo.2007).

■ The express language of the Trust Fund Statute creates a trust consisting of funds disbursed to a "contractor or subcontractor ... on any construction project...." The Debtor argues that any funds received by Big Mountain from the construction loan or from the sale of the property were not subject to a trust under the Trust Fund Statute because Big Mountain was not a contractor or subcontractor, but instead was the owner of the Property. The affidavits from each Plaintiff and invoices attached thereto show that each Plaintiff believed it had entered into a contract with Bowen and submitted invoices for payment to Bowen. The Statement of Lien filed by Timberline lists Big Mountain as the general contractor. On BRR's Statement of Lien the general contractor is shown as Bowen and/or Big Mountain. The uncontroverted deposition testimony of the Debtor shows that draw requests on the construction loan were made solely by Big Mountain and that Big Mountain made all of the payments directly to suppliers. It appears from the undisputed facts of the case that Big Mountain was the general contractor and that Bowen was a sub-contractor.

In a similar case, where the owner of the property contracted with the ultimate purchasers of the property to build a home, where the owner of the property obtained the construction loan and paid the subcontractors on the property, and where the owner of the property failed to use all of the proceeds from the sale to pay unpaid sub-contractors on the property, the Colorado Court of Appeals held that the owner of the property, a "merchant homebuilder," was subject to the provisions of the Trust Fund Statute. *Flooring Design Associates, Inc. v. Novick,* 923 P.2d 216, 220 (Colo.App.1995). In *Novick,* the Court of Appeals further held that the proceeds from the sale constituted "funds disbursed to a contractor" under the Trust Fund Statute and that the failure of the "merchant homebuilder" to pay unpaid suppliers from the proceeds of the sale constituted a violation of the statute. *Id.* at 220–21.

Therefore, all funds disbursed to Big Mountain from the construction loan and all funds received by Big Mountain from the sale of the Property constituted "funds disbursed to a contractor" and were subject to the Trust Fund Statute.[3]

■■ It is undisputed that Big Mountain received proceeds from the construction loan on the Property for which it could not account. As set forth above, the construction loan balance at closing was approximately $1.9 million dollars, while documented payments to suppliers of material and labor on the property accounted for less than $1.1 million dollars. There was over $800,000 which was received by Big Mountain which it cannot demonstrate was used to pay suppliers. It is also undisputed that proceeds from the sale of the Property were not used to satisfy the claims of Plaintiffs or other beneficiaries of the Trust Fund Statute, but were instead used to pay another obligation of the Debtor which was unrelated to the construction on the Property as well as debts to the Debtor's father and father-in-law. A defalcation committed in the course of a fiduciary relationship does not require any

---

**3.** The Debtor's argument that no funds were received by Big Mountain from either the construction loan or the sale of the Properly is without merit. These funds may have been physically disbursed by entities other than Big Mountain, but they were unquestionably Big Mountain's funds, disbursed at its direction.

deliberate wrong-doing or element of intent or bad faith. Negligence or the failure of a fiduciary to account for money or property entrusted to him is sufficient to establish a defalcation. *In re Woods,* 284 B.R. at 290. Big Mountain's failure to fully account for all disbursements from the construction loan and its use of proceeds from the sale of the Property in a manner inconsistent with the Trust Fund Statute constitute violations of the Trust Fund Statute.

 Under Colorado law, an individual in complete control of the finances and financial decisions of an entity which violated the Trust Fund Statute is personally liable for such violation. *In re Walker,* 325 B.R. 598, 601 (D.Colo.2005); *Flooring Design Associates, Inc. v. Novick,* 923 P.2d at 221; *Alexander Co. v. Packard,* 754 P.2d 780, 782 (Colo.App.1988). It is undisputed that the Debtor was the only person in control of Big Mountain's finances and financial decisions; therefore, he is personally liable for the violations of the Trust Fund Statute committed by Big Mountain.

 The undisputed facts in this case establish that funds received by Big Mountain from the construction loan and from the sale of the Property were subject to the provisions of the Trust Fund Statute, that Big Mountain committed a defalcation by failing to ensure that all such "disbursements" were held in trust for the unpaid suppliers of material and labor, and that the Debtor is personally responsible for any of Big Mountain's violations of the Trust Fund Statute. Therefore, the debts owed by the Debtor to each Plaintiff which result from this defalcation are nondischargeable under 11 U.S.C. § 523(a)(4).

### C. Amount of the Debts Resulting from the Defalcation

### 1. Principal Amount

According to the Affidavit of Chet Pritchard, President of Pritchard, the entire principal amount of Pritchard's debt is for labor and materials supplied to the construction project on the Property in November, 2002, pursuant to a contract with Bowen and/or Big Mountain. Therefore, Pritchard's entire debt of $52,217.80 is a debt resulting from the Debtor's defalcation while acting in a fiduciary capacity and is non-dischargeable under 11 U.S.C. § 523(a)(4).

The Affidavit of Trevor Bramwell, President of Preferred, reflects that the principal amount of $30,261.00 is owed to Preferred for labor and materials supplied to the construction project on the Property in November and December, 2002, pursuant to contracts with Bowen. Therefore, Preferred's entire debt of $30,261.00 is non-dischargeable under 11 U.S.C. § 523(a)(4) as well.

According to the Affidavit and other supplemental materials filed by BRR, BRR's claim, in the principal amount of $12,502.29, results from unpaid invoices for labor and material supplied to the construction project on the Property prior to or on December 10, 2002. With interest at 8%, from December 16, 2002, taking into account the dates of the payment and credits received or applied by BRR after December 16, 2002, BRR's debt totals $15,299.44 as of December 3, 2004. This debt is non-dischargeable under 11 U.S.C. § 523(a)(4).

 In the Affidavit of James A. Carey, President of Timberline, Timberline claims to be owed $26,724.11 for materials and labor supplied to the construction project on the Property. Of this amount, however, $2,988.64, is attributable to extras ordered by the Muts after they acquired the Property from the Debtor. The invoices attached to Mr. Carey's affi-

davit show that the extras were ordered in February and March, 2003 and the total amount invoiced directly to the Muts by Timberline for the extras was $12,988.64. Timberline received a payment in the amount of $10,000 from the Muts on June 30, 2003. The $2,988.64 in unpaid invoices for "extras" cannot be attributed to the Debtor's breach of the Trust Fund Statute. This portion of the debt is on account of a separate contract for which the Debtor received no disbursements either from the construction loan or from the sale of the Property. The obligation to pay for the "extras" does not arise from a contract between Timberline and the Debtor or any of his entities. The Debtor is not liable for this portion of Timberline's claim. The total amount of Timberline's debt for which the Debtor is personally liable and which is non-dischargeable under 11 U.S.C. § 523(a)(4) is $23,735.77.

### 2. Interest

 Plaintiffs seek interest on their unpaid claims under various theories. Pritchard and BRR. request interest at Colorado's statutory rate of 8% pursuant to C.R.S. § 5–12–102. Preferred claims interest at 12% pursuant to the provision of the mechanics' lien statute, C.R.S. § 38–22–101(5). Timberline claims interest at the rate of 18% and attorneys' fees pursuant to its contract.

Plaintiffs do not seek recovery under their contracts on their Joint Motion, they proceed only on a theory of breach of trust or defalcation by a fiduciary. This case is analogous to cases dealing with the non-dischargeability of a debt for willful and malicious injury to property which is founded on the debtor's conversion of collateral of a secured party. Though there is an underlying contract between the parties in such cases, the debt which is non-dischargeable, under 11 U.S.C. § 523(a)(6)

as a result of the willful and malicious injury to the creditor's property, is a claim sounding in tort which does not arise under the contract; therefore, the contract provisions do not control the amount of the non-dischargeable debt. *See, In re Gagle,* 230 B.R. 174, 184–85 (Bankr.Utah 1999). As stated by the court in *In re Gagle,*

> The debt owed to [the lender] under § 523(a)(6) does not arise through a claim for recovery on a contract, for mere breach of contract will not support an action under § 523(a)(6). Therefore, to determine the claim of [the lender] owed by [the debtor], it is inappropriate to simply adopt the Debt, consisting of the balance due on the Loan, and fees and costs.

230 B.R. at 184 (citation and footnote omitted).

Similarly, the debts that are non-dischargeable in this case are not debts arising from the parties' contracts, they are the debts resulting from the Debtor's defalcation while acting in a fiduciary capacity. Since the non-dischargeable liability of the Debtor is for this breach of his fiduciary duty, and not for any breach of the contracts, the contract provisions do not determine the amount of the non-dischargeable debt or the rate of interest thereon. Therefore, Timberline is not entitled to recover interest at the rate set forth in its contract, nor is it entitled to attorneys' fees for "collecting ..., enforcing or defending" the contract as therein provided.

Preferred's claim of interest at 12% under the mechanics' lien statute has been rejected by the United States District Court in *First Commercial Corp. v. First Nat'l Bancorporation,* 572 F.Supp. 1430, 1434 (D.Colo.1983). There, the court distinguished a claim for breach of the trust created by the Trust Fund Statute from a claim under the lien statute, for which

contract interest, or statutory interest at 12% would apply under C.R.S. § 38–22–101(5), noting that the Trust Fund Statute "is ... a separate form of protection and relief-from the Mechanics' lien statute-to unpaid laborers and materialmen." *Id.*

Colorado law allows creditors harmed by a trustee's breach of duty to recover statutory interest at 8%, pursuant to C.R.S. § 5–12–102(1)(b), from the date the breach of trust occurred. *Vento v. Colo. Nat'l Bank–Pueblo,* 907 P.2d 642, 647 (Colo.App. 1995). Though there is no evidence of a particular date on which proceeds from the construction loan were diverted and unaccounted for by the Debtor, the Court is able to determine the date on which the Debtor breached the trust by his use of the Property sales proceeds. Plaintiffs are entitled to interest at the rate of 8% on the unpaid balance of their non-dischargeable claims from and after December 16, 2002, the date that the proceeds from the sale of the Property were used in a manner inconsistent with the Trust Fund Statute.

### 3. Treble Damages and Attorneys Fees under C.R.S. § 18–4–405

 The Trust Fund Statute provides that any person who violates the trust, "commits theft, as defined in section 18–4–401, C.R.S." C.R.S. § 38–22–127(5). Plaintiffs read this statutory language in conjunction with C.R.S. § 18–4–405 (the Rights in Stolen Property Statute) as establishing their right to recover treble damages, costs and attorneys fees in addition to the principal amount of their unpaid invoices. The Rights in Stolen Property Statute provides that,

> All property obtained by theft ... shall be restored to the owner. ... The owner may maintain an action not only against the taker thereof but also against any person in whose possession he finds the property. In any such action, the owner may recover ... three times the amount of the actual damages sustained by him ... and may also recover costs of the action and reasonable attorney fees. ...

C.R.S. § 18–4–405.

The Colorado Supreme Court has interpreted the placement of the Rights in Stolen Property Statute in the Criminal Code as an expression of the legislature's intent that the criminal act of theft must proved, using the elements of the crime as defined in the Criminal Code,[4] in order for a victim to recover treble damages. *Itin v. Ungar,* 17 P.3d 129, 133–35 (Colo.2000). In *Itin,* the court stated that, "the statute provides for a private civil remedy enabling the owner of stolen property to recover the property ... and to recover treble damages ... if the taker commits one of the following *criminal acts:* theft, robbery, or burglary." *Id.* at 133 (emphasis added). All of the statutory elements of theft must be proved in order for the victim to recover under the Rights in Stolen Property Statute. *Id.* at 134.

---

**4.** The elements of criminal theft are set forth in C.R.S. § 18–4–401 as follows:

(1) A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and:

(a) Intends to deprive the other person permanently of the use or benefit of the thing of value; or

(b) Knowingly uses, conceals, or abandons the tiring of value in such manner as to deprive the other person permanently of its use or benefit; or

(c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently or its use and benefit; or

(d) Demands any consideration to which he is not legally entitled as a condition of restoring the thing of value to the other person.

Plaintiffs argue that it is enough to establish "theft" as defined in the Trust Fund Statute in order to recover treble damages and attorneys fees under the Rights in Stolen Property Statute, The Colorado Supreme Court has not ruled on this precise issue. The defendant in *Itin* was charged with taking the plaintiff's money without authorization and a jury determined that all of the elements of theft as defined in the criminal statute, C.R.S. § 18–4–401, had been proved.

A bankruptcy court in this district has recently analyzed the interplay of a purely civil statute similar to the Trust Fund Statute with the Rights in Stolen Property Statute. *See, Bemas Construction, Inc. v. Dorland (In re Dorland),* 374 B.R. 765 (Bankr.Colo.2007). In *Dorland,* the court concluded that the debtor had violated the provisions of the Public Works Contractors' Trust Fund Statute, which also contains a provision that any person violating the statute "commits theft within the meaning of 18–4–401, C.R.S." *See,* C.R.S. § 38–26–109(4). The court declined to "automatically" award treble damages to the creditor based only on the violation of the Public Works Trust Fund Statute. It interpreted *Itin* as requiring the elements of the *crime* of theft, as defined in C.R.S. § 18–4–401, be proved in order to entitle the owner of the property to recover treble damages. Finding no evidence of the debtor's intent to permanently deprive the creditor of its property or that the debtor demanded any consideration that he was not legally entitled to as a condition of restoring the property, the court found no

proof of conduct which would constitute criminal conduct and no justification for imposing the criminal penalty of treble damages. *Dorland,* 374 B.R. at 780–81.

This Court agrees with the conclusion in *Dorland.* The Colorado Supreme Court in *Itin* has construed the Rights in Stolen Property Statute as a civil remedy which is available upon the proof of criminal conduct. A conviction for the crime of theft resulting from the violation of the Trust Fund Statute requires proof of all of the elements of criminal theft, as set forth in C.R.S. § 18–4–401. *People v. Mendro,* 731 P.2d 704, 706 (Colo.1987); *People v. Anderson,* 773 P.2d 542 (Colo.1989). A showing of a violation of the Trust Fund Statute is not sufficient to establish that the *crime* of theft has been committed. *People v. Mendro,* 731 P.2d at 706.

In the *Anderson* case, the Colorado Supreme Court stated that a defendant could be found guilty of felony theft arising out of the misuse of construction project trust funds if he "knowingly" exercised control over the property of another without authorization and if he "knowingly" used the property in such a manner as to deprive the owner of the property.[5] The Court stated that the defendant could have been found guilty of theft if he was "aware that his manner of using the trust funds [was] practically certain to result in depriving another person of the use or benefit of the funds." 773 P.2d at 545.

The evidence before the Court on Plaintiffs' motion for summary judgment is

---

5. It is unclear from the Colorado cases just how much "knowledge" a contractor must have of the existence of the suppliers' interest in the trust funds in order to be guilty of criminal theft. In *People v. Mendro,* the court held that it was not necessary for the contractor to be aware of the specific provisions of the Trust Fund Statute in order to be guilty of theft. 731 P.2d at 707. In *People v.*

*Anderson,* it is implied that a contractor's knowledge that there are unpaid bills from suppliers on a construction project may be sufficient. 773 P.2d at 543–44. It is not necessary to determine this issue at this time in light of the Court's finding that the Plaintiffs have not established the absence of a genuine issue of fact on one of the other elements of criminal theft.

not sufficient to establish as a matter of undisputed fact that the Debtor was aware that his use of the proceeds from the construction loan and the sale of the Property was "practically certain" to deprive Plaintiffs of the use or benefit of the funds. There is no evidence whatsoever concerning the Defendant's state of mind with respect to the disposition of the funds or the existence of Plaintiffs' claims. Plaintiffs' Motion for Summary Judgment will be denied to the extent it seeks treble damages and attorneys fees under the Rights in Stolen Property Statute.

It is accordingly

ORDERED that Plaintiffs' Joint Motion for Summary Judgment is GRANTED, in part, and judgment will enter in favor of Plaintiffs and against the Debtor in the amounts set forth below and declaring the debts to be non-dischargeable under 11 U.S.C. § 523(a)(4):

| Pritchard Concrete, Inc. | $52,217.80, plus interest at 8% from and after December 16, 2002 |
| Preferred Craftsmen, Inc. | $30,261.00, plus interest at 8% from and after December 16, 2002 |
| Timberline Kitchen & Bath, Inc. | $23,735.77, plus interest at 8% from and after December 16, 2002 |
| BRR Enterprises, Inc. | $15,299.24, plus interest at 8% from and after December 3, 2004 |

It is

FURTHER ORDERED that Plaintiffs may request a trial on their claims for treble damages and attorneys' fees under C.R.S. § 18–4–405 within twenty (20) days from the date of entry of this Order, failing which these claims will be deemed abandoned and will be dismissed; and it is

FURTHER ORDERED that Pritchard may request a trial on the remaining claims of its Complaint within twenty (20) days from the date of entry of this Order, failing which these claims will be deemed abandoned and will be dismissed; and it is

FURTHER ORDERED that the Motions to Set Scheduling Conference and Trial Date, filed by Preferred and Timberline on May 31 and August 20, 2007, respectively, are DENIED.