**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellant,**

**v.**

**Kenneth E. ANDERSON,**
**Defendant–Appellee.**

**No. 88SA34.**

Supreme Court of Colorado,
En Banc.

May 1, 1989.

Rehearing Denied June 5, 1989.

Barney Iuppa, Dist. Atty., Donald L. Ketels, Jr., Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Robin Desmond, Deputy State Pub-

---

lic Defender, Denver, for defendant-appellee.

QUINN, Chief Justice.

The People appeal from an order, entered after a preliminary hearing in the district court, dismissing a felony-theft charge filed against the defendant, Kenneth E. Anderson.[1] We reverse the judgment of dismissal and remand the case with directions to reinstate the charge and for further proceedings.

## I.

The defendant was charged with felony-theft, a class 3 felony, by knowingly taking $10,000 or more from James and Aileen MacDonald on or about September 13, 1985, in El Paso County, Colorado. A preliminary hearing was conducted by the district court on December 14, 1987. The only witness testifying at the hearing was James MacDonald, who described the following sequence of events underlying the charge.

On January 18, 1985, the defendant, doing business as Woodridge Construction,[2] negotiated a contract with the MacDonalds for the construction of a custom home in the City of Colorado Springs. The contract specified that Woodridge Construction would build the home for the MacDonalds, and that in the event the MacDonalds were unable to sell their present home prior to the closing date, Woodridge Construction would assume the mortgage on that home and credit the MacDonalds with their accumulated equity against the purchase price of the new home. A construction loan was then obtained from a local bank, and the note for the loan was co-signed by the defendant on behalf of Woodridge Construction and by James MacDonald.

The closing on the new home took place on September 13, 1985. At the closing the MacDonalds deeded their present home to Woodridge Construction and disbursed $24,000 to the defendant for the payment of any outstanding liens or debts for work performed on the new home.[3] Although the defendant knew at the time of closing that various bills had not yet been paid, he made no mention of that fact to the MacDonalds, and the MacDonalds accordingly assumed that all contractors, suppliers, and laborers would be paid out of the funds delivered to the defendant at the closing.

Shortly after moving into their new home in September 1985, ten liens totalling $29,804 were filed by subcontractors and suppliers who had contracted with Woodridge Construction for work on the home. The defendant, upon being notified of these claims, assured the MacDonalds that the liens would be paid. The defendant, however, was unable to do so and eventually told the MacDonalds that he had no money to pay the claims resulting from the construction project. Although the MacDonalds successfully defended against several of the liens on grounds of late filing and other technicalities, they were ultimately held liable for claims totaling $7,200 for work performed on the home.

Since the defendant had also represented himself to the MacDonalds as a realtor, the MacDonalds filed a complaint against the defendant with the Colorado Springs Board of Realtors. During the course of his testi-

---

1. This appeal was filed pursuant to section 16–12–102(1), 8A C.R.S. (1986), which permits the prosecution to appeal any decision of the trial court in a criminal case upon any question of law. The prosecution's notice of appeal in this case was filed on January 27, 1988, pursuant to the former version of C.A.R. 4(b)(2), which authorized prosecutorial appeals to be filed in this court. Effective August 1, 1988, C.A.R. 4(b)(2) was amended to require such appeals to be filed in the court of appeals.

2. The record does not establish whether Woodridge Construction was a corporation, partnership, or sole proprietorship. Whatever the legal form under which Woodridge Construction operated, the defendant's criminal responsibility would remain unchanged. *See* § 18–1–607, 8B C.R.S. (1986) (a person is criminally liable for criminal conduct performed on behalf of a corporation to the same extent as if conduct were performed in his own behalf).

3. According to MacDonald's testimony, Woodridge Construction was not able to maintain the payments on the MacDonald home deeded to Woodridge Construction at the closing, and the mortgage company ultimately foreclosed on that property.

mony at the preliminary hearing in this case, James MacDonald stated that he was present during the hearing before the Board of Realtors and summarized the defendant's testimony given under oath at that hearing. The defendant, according to MacDonald, testified that prior to the closing on the MacDonalds' home on September 13, 1985, the defendant had fired his superintendent and later discovered a large amount of unpaid bills in the superintendent's desk drawer. Although the defendant paid these bills, he nonetheless acknowledged that at the time of the closing he was aware that various other construction bills had not been paid and that several subcontractors had not yet even submitted statements to him. The defendant further testified before the Board of Realtors that he expected to be able to pay these bills out of the $24,000 received from the MacDonalds at the closing but that he eventually used only $8,000 of the $24,000 for that purpose and used the remaining $16,000 to pay bills on other construction projects.

At the conclusion of the preliminary hearing the district court dismissed the felony-theft charge, ruling that there was insufficient evidence of any intent on the part of the defendant to permanently deprive the MacDonalds of the $24,000 disbursed to him for payment of claims arising out of the construction project. The People thereafter filed this appeal and now urge the following two grounds for reversing the order of dismissal: (1) the district court applied an erroneous standard of mental culpability by requiring the People to establish a specific intent on the part of the defendant to permanently deprive the MacDonalds of the $24,000 which they disbursed to the defendant, rather than by analyzing the evidence in terms of whether the defendant knowingly used the $24,000 in such a manner as to deprive the MacDonalds permanently of their money; and (2) under the appropriate "knowing use" standard of culpability, probable cause for felony-theft was established at the preliminary hearing.

## II.

■ We first consider the standard of mental culpability applied by the district court in resolving the issue of probable cause. The charge of felony-theft in this case was based on the defendant's failure to use the $24,000 disbursed to him by the MacDonalds in accordance with the requirements of section 38–22–127(1), 16A C.R.S. (1982), which states:

> All funds disbursed to any contractor or subcontractor under any building, construction, or remodeling contract or on any construction project shall be held in trust for the payment of the subcontractors, material suppliers, or laborers who have furnished materials, services, or labor, who have a lien, or may have a lien, against the property, or who claim, or may claim, against a principal and surety under the provisions of this article and for which such disbursement was made.

Subsection 5 of section 38–22–127 states that a violation of this statute constitutes theft as defined in section 18–4–401, 8B C.R.S. (1986). The statutory definition of theft, as set forth in section 18–4–401(1), is as follows:

> (1) A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and:
>
> (a) Intends to deprive the other person permanently of the use or benefit of the thing of value; or
>
> (b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit; or
>
> (c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use and benefit; or
>
> (d) Demands any consideration to which he is not legally entitled as a condition of restoring the thing of value to the other person.

Theft is a class 4 felony if the value of the thing involved is $300 or more but less than $10,000, and a class 3 felony if the value of the thing involved is $10,000 or more.

§ 18-4-401(2)(c) and (d), 8B C.R.S. (1986 & 1988 Supp.).

The elements of theft are plain from the text of section 18-4-401. Theft involves the "knowing control over the property of another either without authorization or by threat or deception and one of the types of mental culpability as set forth in subsections (1)(a), (b), and (c) of the statute." *People v. Quick*, 713 P.2d 1282, 1289 (Colo. 1986). Only one of these mental culpability elements requires the intent to permanently deprive another of the use or benefit of the thing of value. Thus, pursuant to section 18-4-401(1)(b), the crime of theft may be committed when the offender knowingly obtains control over the property of another without authorization and, even though not intending to deprive the other person permanently of the use or benefit of the property, nonetheless knowingly uses the property in such manner as to deprive the other person permanently of the use or benefit of the property.[4]

In analyzing the evidence offered at the preliminary hearing, the district court considered only the "intent to permanently deprive" element of subsection 18-4-401(1)(a) to the exclusion of the "knowingly using" element of subsection 18-4-401(1)(b). In the context of theft of construction project trust funds, the "knowingly using" element of mental culpability in subsection 18-4-401(1)(b) does not require a conscious objective to deprive another person of the use or benefit of the construction trust funds, but instead requires the offender to be aware that his manner of using the trust funds is practically certain to result in depriving another person of the use or benefit of the funds. *See People v. Mendro*, 731 P.2d 704 (Colo. 1987) (crime of felony-theft based on misuse of construction trust funds in violation of 38-22-127 requires proof of any of the several culpable states outlined in general theft prohibition of section 18-4-401). By failing to consider the prosecution's evidence under the "knowingly using" element of mental culpability in section 18-4-401(1)(b), the district court erred.

## III.

We next consider whether the People's evidence established probable cause to believe that the defendant committed the crime of felony-theft as charged. In ruling on the issue of probable cause, the court must view the evidence in a light most favorable to the prosecution and draw all reasonable inferences in favor of a probable cause determination. *E.g., People v. Taylor*, 655 P.2d 382 (Colo.1982); *People v. Williams*, 628 P.2d 1011 (Colo.1981); *People v. Johnson*, 618 P.2d 262 (Colo.1980). We are satisfied that the evidence, when so considered, establishes probable cause to believe that the defendant committed the crime of felony-theft.

The People's evidence established that on September 13, 1985, the defendant received $24,000 from the MacDonalds for the purpose of paying subcontractors, suppliers, and laborers for work performed on the MacDonald home and that the defendant, with knowledge of outstanding liens and other charges against the property and without any authorization whatever from the MacDonalds, used $16,000 of the $24,-000 for purposes totally unrelated to the construction of the MacDonald home. This evidence, when viewed in a light most favorable to the prosecution, clearly establishes probable cause to believe that the defendant, without authorization, knowingly used the money disbursed to him in such a manner as to deprive another person permanently of its use or benefit in violation of 18-4-401(1)(b).

In urging a contrary view of the evidence, the defendant relies on section 38-22-127(2), 16A C.R.S. (1982), which states, in pertinent part, that a contractor is not required to hold in trust any funds disbursed to him for any subcontractor, supplier, or laborer who claims a lien against the property when the contractor "has a

---

**4.** A person acts " 'knowingly' ... with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such a nature or that such circumstance exists," and with respect to a result of particular conduct "when he is aware that his conduct is practically certain to cause the result." § 18-1-501(6), 8B C.R.S. (1986).

**546**

good faith belief that such lien or claim is not valid." The defendant argues that, since the MacDonalds successfully defended against seven of the ten liens and were ultimately liable for only $7,200 of the unpaid claims against the home, the evidence at the preliminary hearing established, at best, probable cause to believe the defendant committed the class 4 felony of theft of $7,200 in violation of section 18–4–401(2)(c), rather than the class 3 felony of theft of $10,000 or more in violation of section 18–4–401(2)(d). We reject the defendant's argument.

Pursuant to section 38–22–127(1), what is critical to the theft of construction project trust funds disbursed to a contractor for the payment of claims for work on a construction project is the offender's act of knowingly misusing the funds so received, and not the homeowner's ultimate success in defending against claims that should have been previously paid by the contractor. There was no evidence that the defendant, when he made use of the $16,000 to pay off debts unrelated to the MacDonald home, had a good faith belief that the liens and claims for work on the MacDonald construction project were not valid. While a "good faith belief" under section 38–22–127(2) might well be raised as a defense at trial, the record of the preliminary hearing is barren of any evidentiary support for such a claim. Thus, the MacDonalds' ability to reduce the amount of legally enforceable liens to $7,200 did not serve to negate the People's evidence establishing the defendant's knowing use of $16,000 in such manner as to deprive the MacDonalds of the use and benefit of that money which the MacDonalds had disbursed to the defendant for the purpose of paying subcontractors, suppliers, and laborers for work performed on the MacDonald home.

The judgment of dismissal is reversed and the case is remanded to the district court for reinstatement of the felony-theft charge and for further proceedings on that charge.