In re VILLAGE HOMES OF
COLORADO, INC.,
Debtor.

Village Homes of Colorado, Inc.,
Debtor in Possession,
Plaintiff,

v.

Guaranty Bank, et al., Defendants.

Bankruptcy No. 08–27714 ABC.
Adversary No. 09–1008 ABC.

United States Bankruptcy Court,
D. Colorado.

May 19, 2009.

Garry R. Appel, Shaun A. Christensen, Denver, CO, for Plaintiff.

Duncan E. Barber, Holly R. Shilliday, Elizabeth K. Flaagan, Scott T. Rodgers, James L. Huemoeller, Risa Lynn Wolf–Smith, Denver, CO, J. Frasher Murphy Dallas, TX, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS DEBTOR'S TRUST FUND WAIVER CLAIM

A. BRUCE CAMPBELL, Bankruptcy Judge.

This matter is before the Court on the Motion to Dismiss Debtor's Trust Fund Waiver Claim ("Motion") filed by Defendant Creative Touch Interiors, Inc. ("CTI") and joined by Defendant Masco Builder Cabinet Group ("Masco"). CTI and Masco are collectively referred to herein as "Defendants." The Court having considered the Motion, the Response filed by the Plaintiff/Debtor Village Homes of Colorado, Inc. ("Debtor"), the Replies filed by Defendants, and the file in this adversary proceeding, finds as follows.

### Background

The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on November 6, 2008. The Debtor is a privately-held company based in Denver that develops communities and builds homes throughout Colorado. The defendants in this adversary proceeding are grouped into two categories: lenders and trade vendors. CTI and Masco are trade vendors.

On the date it filed its Chapter 11 petition, the Debtor had funds on deposit in various depository accounts in the approximate amount of $2,000,000 (the "Deposit Money"). The Debtor alleges that it is unable to trace the precise source of these funds, but that it has typically received and deposited funds from its lenders, the sale of homes, refunds of deposits, and other miscellaneous sources. By motion filed in its main Chapter 11 case on November 6, 2008, the Debtor requested the Court to determine that the Deposit Money was not cash collateral or otherwise subject to the interest of any party other than the Debtor, or in the alternative, if it was determined to be cash collateral, that the Debtor be allowed to use the Deposit Money if the Debtor provided adequate protection for the parties claiming an interest in the funds. The Debtor proposed that adequate protection would be provided for any entity that was determined to have an interest in the Deposit Money by a replacement lien on real property owned by the Debtor and valued substantially in excess of encumbrances against it.

On December 10, 2008, the Court entered an Order allowing the Debtor to use the Deposit Money and providing the contingent adequate protection that had been proposed by the Debtor. One of the terms of that order was that the Debtor bring an adversary proceeding to determine the nature, extent, and priority of the interests in the Deposit Funds. On January 9, 2009, the Debtor filed this adversary proceeding against more than 200 defendants, seeking declaratory relief in the nature of an order determining that none of the defendants had any interest in the Deposit Money on the petition date.

The Complaint alleges, *inter alia*, that each trade vendor defendant signed a construction subcontract agreement with the Debtor that unambiguously waived all rights of the trade vendors to make claims under Colorado's Mechanics' Lien Trust Fund Statute, C.R.S. § 38–22–127 (the "Trust Fund Statute"). This provision (the "Waiver"), as quoted in the Complaint, provides as follows.

> SUBCONTRACTOR HEREBY WAIVES ALL PROVISIONS OF THE COLORADO TRUST FUND STATUTE C.R.S. § 38–22–127 *et seq.* AND RELEASES VILLAGE AND ITS EMPLOYEES, OFFICERS, OWNERS AND DIRECTORS FROM ANY OBLIGATION DESCRIBED IN OR ARISING FROM THE STATUTE.

The Complaint alleges that, because of the Waiver, none of the trade vendor defendants has any rights in the Deposit Money as a result of the Trust Fund Statute.

### Arguments of the Parties

CTI and Masco have filed their Motion seeking to dismiss this "claim" of the Complaint. They argue that the Waiver is unenforceable as a matter of law. Defendants contend that: (1) the Waiver is void as contrary to Colorado public policy; (2) that it is an unenforceable exculpatory clause, because it attempts to excuse a prospective breach of fiduciary duty, conversion, and/or criminal conduct; and (3) and that the Waiver is not permitted by the Trust Fund Statute.

The Debtor argues that: (1) the Motion is premature until Defendants demonstrate their right to make a trust fund claim in the Deposit Money; (2) that resolution of the Motion depends on facts not in evidence and that it should be treated as a motion for summary judgment and held in abeyance until conclusion of discovery; (3) that the Waiver is neither contrary to public policy nor is it an unenforceable exculpatory clause; (4) that the lack of an express statutory provision permitting waiver of trust fund rights does not establish a policy prohibiting such waivers; and (5) that the Waiver is part of a valid contract between sophisticated parties and should be enforced according to its terms.

### Discussion

#### 1. The Motion is Not Premature

■ Defendants have argued that the Waiver quoted in the Complaint is unenforceable as a matter of law. For the purposes of the Motion, Defendants have admitted that the subcontract agreements they signed contained the Waiver. They assert that the Waiver is contrary to the public policy expressed in Colorado's mechanics lien statutes and/or that it seeks to relieve the Debtor of liability for wrongful conduct and, as such, is void. These arguments are essentially affirmative defenses to the Debtor's request for declaratory relief enforcing the Waiver. An affirmative defense may be raised in a motion to dismiss for failure to state a claim if the defense appears plainly on the face of the complaint itself. *Miller v. Shell Oil Co.,* 345 F.2d 891, 893 (10th Cir.1965). *See also, Jones v. Bock,* 549 U.S. 199, 215, 127 S.Ct. 910, 920–21, 166 L.Ed.2d 798 (2007); 5B C. Wright and A. Miller, Federal Practice and Procedure § 1357 pp. 708–710 (3d ed.2004).

■ The evaluation of Defendants' Motion does not require the Court to consider any matters not apparent on the face of the Complaint. Whether a contract is void as against public policy or contains an unenforceable exculpatory clause are questions of law. *FDIC v. American Cas. Co.,* 843 P.2d 1285, 1290–91 (Colo.1992); *Jones v. Dressel,* 623 P.2d 370, 376 (Colo.1981). If successful, Defendants' Motion would completely dispose of one of the Debtor's grounds for relief. Accordingly, the Mo-

tion is appropriately considered at this stage of the proceeding as a motion to dismiss under Fed.R.Civ.P. 12(b)(6).

## 2. The Waiver is Not Void as Against Public Policy

 It is a long-standing axiom of contract law that a contract provision is void if the interest in enforcing the provision is clearly outweighed by a contrary public policy. *Mason v. Orthodontic Centers of Colorado, Inc.*, 516 F.Supp.2d 1205, 1212 (D.Colo.2007), citing *FDIC v. American Cas. Co.*, 843 P.2d at 1290. The rule exists not to protect the party seeking to avoid its obligations under the agreement, but rather, for the protection of the public at large. *Pierce v. St. Vrain Valley School Dist.*, 944 P.2d 646, 649 (Colo.App.1997), *rev'd on other grounds*, 981 P.2d 600 (Colo. 1999). A statute may confer rights or benefits on a party, but unless the statute also serves to protect the interests of the public as a whole, the party benefitted by the statute is free to voluntarily waive its benefits. *Francam Bldg. Corp. v. Fail*, 646 P.2d 345, 348–49 (Colo.1982)(tenant may waive statutory right to three days notice of demand for rent or possession).

 Courts must be cautious in finding contract provisions void as offensive to public policy. This is so because to invalidate a provision of a contract freely entered is to infringe on "one of the essential freedoms of citizenry [which] is the right to bargain and contract." *Superior Oil Co. v. Western Slope Gas Co.*, 549 F.Supp. 463, 468 (D.Colo.1982), *aff'd* 758 F.2d 500 (10th Cir.1985). A court is not warranted in voiding a contract unless it is "fully and solemnly convinced" that an existing public policy is clearly revealed in the laws of the jurisdiction. *Id.*

 The Trust Fund Statute provides that all funds disbursed to a contractor or subcontractor under any construction contract "shall be held in trust" for the payment of those who have provided materials or labor for the construction project. According to C.R.S. § 38–22–127(5), any person who violates the Trust Fund Statute "commits theft." [1]

 As recently articulated by the Colorado Supreme Court, the primary purpose behind the Trust Fund Statute and Colorado's other mechanics' lien laws is to protect laborers and material suppliers and to ensure that they are "paid for the value they add to property." *Fowler & Peth v. Regan (In re Regan)*, 151 P.3d 1281, 1283 (Colo.2007). The Trust Fund Statute serves the additional purpose of protecting homeowners from the risk of having to make double payment to clear mechanics' liens from their property. This latter purpose has been cited by courts that have allowed homeowners to enforce the trust even though they are not specifically designated as beneficiaries of the statute. *See, e.g., Syfrett v. Pullen*, 209 P.3d 1167, 2008 WL 5352682 (Colo.App. 2008)(not released for publication); *Stetson Ridge v. Walker (In re Walker)*, 325 B.R. 598 (D.Colo.2005).

1. Colorado courts have held that a prosecution for the crime of theft resulting from the violation of the Trust Fund Statute requires proof of *all* of the elements of criminal theft as set forth in C.R.S. § 18–4–401. *People v. Mendro*, 731 P.2d 704, 706 (Colo.1987); *People v. Anderson*, 773 P.2d 542, 545 (Colo. 1989). Merely showing a violation of the Trust Fund Statute is not sufficient to establish that the crime of theft has been committed. *Mendro*, 731 P.2d at 706. In *Anderson*, the Colorado Supreme Court stated that a defendant could be found guilty of felony theft arising out of the misuse of construction project trust funds if he "knowingly" exercised control over the property of another without authorization and if he "knowingly" used the property in such a manner as to deprive the owner of the property. 773 P.2d at 545.

■ Colorado law is clear that Defendants, like the tenant who waived its right to a three-day notice in *Francam Bldg. Corp. v. Fail*, or the wage earners who were free to assign their otherwise exempt wages in *Chicago, B. & Q.R. Co. v. Provolt*, 42 Colo. 103, 93 P. 1126 (Colo.1908), are permitted to waive rights granted by a statute enacted for their benefit and protection. The fact that the Trust Fund Statute also protects the interests of property owners should not restrict the ability of a supplier or laborer to waive its rights under the statute if such a waiver does not negatively impact the interest of property owners that the statute seeks to protect. Because of the manner in which the Trust Fund Statute has been interpreted, allowing suppliers and laborers to waive their claims under the Trust Fund Statute does not adversely affect the interests of property owners, since property owners themselves may directly enforce the Trust Fund Statute. *See, Walker*, 325 B.R. at 602–03, and cases cited therein. There is no reason to believe that a subcontractor's waiver would affect a property owner's ability to make a claim for breach of the statutory trust. In the case of residential property, the interest of individual homeowners is further protected by C.R.S. § 38–22–113(4), which provides an affirmative defense to a mechanics lien if the homeowner has paid the full contract price to the general contractor.

■ Where there is no legislation prohibiting waiver of a statutory right, such a waiver is unenforceable on grounds of public policy only if "the interest in its enforcement is *clearly outweighed* in the circumstances by a public policy against enforcement." Restatement (Second) of Contracts § 178 (1981)(emphasis added). Given that the interest of property owners is adequately protected by their individual right to enforce the Trust Fund Statute

and by C.R.S. § 38–22–113(4), and in the absence of any suggestion of coercion, fraud, or other misconduct by the Debtor in obtaining the trade vendors' agreement to the Waiver as a part of their subcontracts, the Court cannot find that the Waiver works harm to the general public interest substantial enough to outweigh the parties' interest in the enforceability of the bargained-for exchange reflected in their contract. Therefore, the Waiver is not void as against public policy.

### 3. The Waiver is Not an Unenforceable Exculpatory Clause

■ Defendants argue that the Waiver attempts to relieve the Debtor from liability for willful breach of trust, conversion, and/or the crime of theft. They assert that an exculpatory clause purporting to excuse liability for wrongful conduct is unenforceable as a matter of law. This argument parallels Defendants' public policy argument and fails for much the same reason.

■ Under Colorado law, a court must consider four factors in determining whether an exculpatory agreement is valid. They are: (1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language. *Jones v. Dressel*, 623 P.2d at 376 (Colo.1981). The Court has determined above that there is no public duty which is violated by the Waiver in this case. The second factor is not involved here because the service offered by the Debtor is not of such an essential nature that it automatically imbues the Debtor with a "decisive advantage of bargaining strength against any member of the public who seeks his services." *Id.*, quoting *Tunkl v. Regents of University of California*, 60 Cal.2d 92, 32 Cal.Rptr. 33,

36, 383 P.2d 441, 444 (1963). There is no suggestion that the subcontractor agreements were not fairly entered into, nor is the Waiver ambiguous. Accordingly, the Waiver is not an invalid exculpatory clause under Colorado law.

The argument that the Waiver allows the Debtor to engage in wrongful conduct is unpersuasive. What makes conduct like theft or breach of trust "wrongful" is that the party committing the conduct is acting in derogation of someone else's rights in property. Because, as discussed above, the Waiver does not violate public policy, Defendants, and the other trade vendors who agreed to it, were free to voluntarily relinquish the interest the Trust Fund Statute gave them in funds disbursed to the Debtor in connection with its construction projects. After releasing the Debtor from "any obligation" under the Trust Fund Statute, Defendants cannot be heard to complain that the Debtor's use of these statutory trust funds amounts to a wrongful breach of trust, or conversion, or theft of property in which Defendants have an interest.[2]

The Debtor's analogy on this point is persuasive: one may surely grant an easement to allow others to use one's real property in a manner which, in the absence of an easement, would constitute trespass. Such an easement would not be considered an invalid exculpatory agreement because it excuses something that would otherwise be a tort or crime.

■ This case is clearly distinguishable from cases involving willful or reckless infliction of physical injury or other clear violations of public policy. Defendants have cited no case in which a court invalidated the voluntary waiver of a private property right, not otherwise contrary to public policy, as an unenforceable exculpatory clause. Absent intentional, wanton, or reckless physical harm or overriding public policy concerns, where a contract is fairly entered into, and where it is clear and unambiguous, it is not unenforceable because it "exculpates" one party from liability which the law would otherwise impose. *See, Jones v. Dressel,* 623 P.2d at 376.

### 4. A Statutory Provision Allowing the Waiver is Not Required

■ Defendants' final argument may be disposed of summarily. Colorado law is clear that statutory rights may be waived unless there is an express provision prohibiting waiver. *Francam Bldg. Corp. v. Fail,* 646 P.2d at 348. There is no express statutory prohibition of a waiver of the Trust Fund Statute. The fact that C.R.S. § 38–22–119 refers to lien waivers, and limits the effect of such waivers to the parties to the agreement, neither authorizes nor prohibits waivers of mechanics' liens. In fact, it recognizes their validity as between the contracting parties. This statute certainly does not give rise to an implication that statutory authorization is required in order to waive rights under the Trust Fund Statute.

### Conclusion

For the foregoing reasons, the Court concludes that the Waiver is not unenforceable as a matter of law. Defendants' Motion to Dismiss Debtor's Trust Fund Waiver Claim is denied.

---

2. *See, People v. Anderson, supra,* which holds a conviction for the crime of theft requires proof of knowing control by the defendant over *property of another, without authoriza-*tion, and use of that property in a manner substantially certain to permanently deprive the *owner* of the use or benefit of the property.